# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HENRY J. SEAMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-106-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Henry J. Seamon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 12, 1961, and was forty-seven years old at the time of the administrative hearing. He obtained his GED and studied auto mechanics and electronics at vocational school (Tr. 27). The claimant has past relevant work as a corrections officer (Tr. 20). The claimant alleges that he has been unable to work since May 9, 2007, because of heart problems, a steel plate in his right arm, lower back pain, and obesity (Tr. 109).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on September 7, 2007. The Commissioner denied his application. ALJ Glenn A. Neel held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 22, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) (Tr. 16). The ALJ found, however, the following exceptions to the claimant's ability to perform sedentary work: i) standing/walking for

only one hour continuously; ii) sitting for only two hours continuously; iii) balancing and stooping only occasionally; iv) never climbing, kneeling, crouching, or crawling; and v) avoiding environments which involve exposure to dust, fumes, or gases (Tr. 16). While the ALJ concluded that the claimant was unable to return to his past relevant work as a corrections officer, he also found that there was other work the claimant could perform in the national economy, *i. e.*, order clerk and semiconductor assembler (Tr. 20). Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 21).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze the "other source" opinion of nurse practitioner Carolyn Stacy-Wilkins, A.R.N.P. and (ii) by failing to properly consider claimant's credibility. The undersigned Magistrate Judge finds that the ALJ erred by failing to properly analyze the claimant's credibility.

The claimant first presented for treatment at the Wewoka Health Center on June 18, 2007, at which time he reported that he wanted to transfer his care from the Creek Nation Health Center in Okemah. His nurse practitioner Carolyn Stacy-Wilkin requested a referral to a cardiologist at that time. During an appointment on August 27, 2007, the claimant again stated that he was transferring his care from Okemah to Wewoka, and related that he had decreased chest pain and occasional shortness of breath (Tr. 169). The diagnoses at that time was dyslipidemia, essential hypertension, diabetes (controlled), and chronic ischemic heart disease, NOS (Tr. 169). The claimant was on several medications, including, *inter alia*, trazodone, enalapril, hydrochlorothiazide, sertraline,

and irbesartan (Tr. 170). The claimant continued receiving treatment from Ms. Stacy-Wilkin through 2009 and on March 24, 2009, she completed a Medical Source Statement-Physical on claimant's behalf (Tr. 485-86). Ms. Stacy-Wilkin opined that claimant could frequently and occasionally lift and/or carry up to ten pounds, stand and/or walk for two hours in an eight-hour workday (and one hour continuously), sit for four hours in an eight-hour workday (and two hours continuously) (Tr. 485). Further, Ms. Stacy-Wilkin found that claimant could frequently balance, reach, handle, finger, and feel, occasionally stoop, and never climb, kneel, crouch, or crawl (Tr. 486). Finally, Ms. Stacy-Wilkin wrote that claimant would be required to lie down during the normal workday to manage his symptoms and that he should avoid exposure to dust and/or fumes because of his COPD (Tr. 485-86).

On June 5, 2007, the claimant presented for a follow-up cardiology appointment with Bryan Lucenta, M.D. During that appointment, the claimant reported feeling well, but Dr. Lucenta documented claimant's right coronary artery occlusion (Tr. 337). On July 9, 2007, the claimant attended a cardiology appointment with Dr. Michael Scherlag, M.D., who wrote that claimant had a totally occluded right coronary artery but attempts of an angioplasty were unsuccessful (Tr. 274). Dr. Scherlag wrote that claimant "is unable to walk any significant distance without having shortness of breath" (Tr. 274). Dr. Scherlag ruled surgery out as a means of therapy at that time (Tr. 277).

State examining physician Dr. Lois S. Beard, D.O. examined the claimant on March 21, 2008. The claimant related at that time that he had suffered a myocardial

infarction on May 9, 2007, which has caused him to have trouble breathing, shortness of breath after just minor activity, and lightheadedness (Tr. 363). Dr. Beard's assessment was that claimant had coronary artery disease with chest pain, morbid obesity, type 2 diabetes (uncontrolled), peripheral neuropathy secondary to diabetes, hypertension, hyperlipidemia, and nicotine habituation (Tr. 365). Upon examination, however, Dr. Beard found that claimant had normal range of motion in all joints, no back pain, and that claimant could effectively manipulate small objects (Tr. 367-69). Dr. Beard completed a form entitled Description of Chest Discomfort – Evidence of Claudication, in which she noted that claimant experienced mild-moderate chest pain two-three times per week which is accompanied by shortness of breath, dizziness, and lightheadedness (Tr. 370).

Upon a review of the medical evidence, state reviewing physician Dr. Luther Woodcock, M.D. opined that claimant was capable of occasionally lifting/carrying ten pounds, frequently lifting/carrying less than ten pounds, standing/walking for two hours in an eight-hour workday, sitting about six hours in an eight hour workday, and unlimited pushing/pulling (Tr. 372). In addition, Dr. Woodcock wrote that claimant should only occasionally climb ramps, stairs, ladders, ropes, and/or scaffolds, balance, stoop, kneel, crouch, and crawl (Tr. 373).

A second Physical Residual Functional Capacity Assessment was completed by state reviewing physician Dr. Ernestine Shires, M.D. (Tr. 410-17). Dr. Shires opined that claimant was capable of both frequently and occasionally lifting/carrying ten pounds, standing for two hours in an eight-hour workday, sitting for six hours in an eight-hour

workday, and unlimited pushing/pulling (Tr. 411). Further, Dr. Shires found that claimant should never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (Tr. 412). Finally, Dr. Shires opined that claimant's obesity prevented him from even moderate exposure to hazards such as machinery and unprotected heights (Tr. 414).

The claimant testified at the administrative hearing that he experiences episodes of chest pain once a day for which he takes nitroglycerin pills (Tr. 34). He described these episodes as "a lot of pressure . . . and it makes it hard to breathe" (Tr. 34). The claimant also testified that following an episode, he feels better after 30 minutes to an hour but that he feels worn out for two-three days following the worse episodes (Tr. 35-36). The claimant testified that upon standing for any length of time, his back hurts and sometimes causes a chest episode and that walking 50-75 yards will cause him to experience shortness of breath (Tr. 41-42).

The claimant contends, *inter alia*, that the ALJ failed to properly analyze his credibility with regard to the limiting nature of his condition. A credibility determination is entitled to deference unless there is an indication the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d

387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The ALJ's credibility analysis here was the following: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment for the reasons explained below." (Tr. 14). The problem with this analysis is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines and *then* formulated an appropriate RFC, not the other way around, *i. e.*, the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC.

Further, in discussing the evidence related to claimant's heart condition, the ALJ cites a report from Dr. Larry Leyser, M.D. documenting the results of an echocardiogram performed May 28, 2008 (Tr. 407-08). However, the ALJ failed to attempt to clarify this inconsistency, *i. e.*, the report first states that claimant had a left ventricular ejection fraction of 37% but later states the left ventricular ejection fraction as 60% (Tr. 407). Before using this report to discredit claimant's statements about the impact his heart condition has on his ability to work, the ALJ should have made an attempt to clarify the

inconsistency within the medical record. 20 C.F.R. § 404.920b ("After we review all of the evidence relevant to your claim . . . we make findings about what the evidence shows. In some situations, we may not be able to make these findings because the evidence in your case record in insufficient or inconsistent. . . We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take additional actions[.]").

Because the ALJ failed to properly analyze the claimant's credibility, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence or record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma